### 39790. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. ANDERSON.

DECIDED JANUARY 25, 1963—
REHEARING DENIED FEBRUARY 8, AND FEBRUARY 14, 1963.

*Pittman & Kinney, L. Hugh Kemp, H. E. Kinney,* for plaintiff in error.

*Mitchell & Mitchell, D. W. Mitchell, D. W. Mitchell, Jr.,* contra.

BELL, Judge. *This case will be more easily comprehended if it is kept in mind that three cases are involved in this opinion. The first is the unappealed trial where the plaintiff secured a verdict and judgment against a defendant who, so the plaintiff asserts, was insured for liability. To a large degree the legal rights of the parties to the next two actions were established in the first trial. The next two trials involved an attempt by the plaintiff to collect from the insurance company the judgment obtained in the first trial which determined liability and awarded damages. These latter cases were appealed to this court. The first is cited in this the last opinion. Obviously, where the word "insured" appears, it is used merely in the descriptive sense to identify the first defendant whom the plaintiff claims to have been insured.*

■ The underlying basis for State Farm's asserted reservation of rights to deny liability is that the insured had made a false and material statement in procuring the policy. The insurer contends that the insured in answering the question whether or not he had ever had a liability policy canceled replied in the negative, and that this was a false statement which made

the policy void ab initio. The insured denied that the question was ever asked him and that he had made any false statements concerning it.

The first issue to be decided is whether the insured was bound by the answers contained in the application for insurance. While the insured denied that he read the application, he admitted that he signed it. The application was introduced in evidence and revealed that there was a negative answer to the question which included, inter alia, whether the insured had ever had any insurance canceled. The evidence without dispute showed that a previous liability policy held by the insured had been canceled.

"One who signs a written document without reading it, unless prevented from doing so by some fraud or artifice . . . is chargeable with knowledge of its contents." *Musgrove v. Musgrove*, 213 Ga. 610, 612 (3) (100 SE2d 577); and *Saddler v. Cotton States Life &c. Ins. Co.*, 101 Ga. App. 866 (115 SE2d 398).

The plaintiff contends that it was a question for the jury to decide whether or not the insured made the false statement on the application and cites in support *Tallent v. Safeco Ins. Co. of America*, 99 Ga. App. 11 (107 SE2d 331). However, on the facts *Tallent* is distinguishable from the present case. In *Tallent* the applicant signed an application *in blank* while here the applicant signed the form *in a completed state* and is bound by the answers to the questions appearing on it.

The case of *Stillson v. Prudential Ins. Co. of America*, 202 Ga. 79 (42 SE2d 121), is distinguishable on the facts from the case before us, as in *Stillson*, p. 80, "The beneficiary named in the policy and another person called as a witness testified that they were present when the application was written; that, as the questions were propounded to the insured by the agent, the insured gave to the agent complete information about his high blood pressure and enlarged heart, and gave him the names of the doctors who had been, and were then, treating him; that the agent then read back to the insured the answers as he pretended they were answered in the application; that the answers to the questions as read by the agent contained complete information about the physical condition of the insured and the

doctors who had been, and were then, treating him; *that after thus reading the answers the agent presented the application to the insured with all portions of the application covered with his hands, except the place for the signature, and the insured signed the application.*" (Emphasis added.)

It follows that the insured here is bound by the false answer in the application. Any other holding would vitiate the validity of written instruments.

■ It is the law of this case, conforming to the previous opinion (*State Farm Mut. Auto. Ins. Co. v. Anderson*, 104 Ga. App. 815, supra), that the notice to the insured alleged in the insurer's answer was "timely and sufficient to fairly inform the insured of the insurer's position" that the alleged insurance policy was void and that, notwithstanding its defense of the action, it disclaimed liability and did not waive the defenses available to it against the insured. *State Farm*, supra, 819. We stated in that opinion: "In none of the cases cited by the plaintiff and none examined by this court is it held that when an insurer defends an action after giving the insured timely and sufficient notice that it is not waiving its right to deny liability, *and the insured does not reject the insurer's defense under this condition,* the insurer is nevertheless estopped to deny liability for a judgment against the insured." (Emphasis added.)

In the second trial (the one we are now considering) plaintiff had seized upon the emphasized portion of the quote and asserts that its meaning is that an insured may reject an insurer's defense under a reservation of rights, in which event the insurer would be estopped to deny liability if it continued to defend despite the rejection. We readily agree with plaintiff in this view of the meaning of the emphasized language, for that is precisely what we intended to convey with the use of the particular words in the previous opinion. However, since the question of rejection by the insured of the defense of the insurer under the conditions imposed in the reservation of rights was not before the court in the former case, the language expressing our view of the effect of such a rejection does not constitute a holding.

The plaintiff now attempts for the first time to assert that the insured, prior to the trial of the case between the plaintiff

and the insured, did indeed reject the right of the insurer to defend his case under the reservation of rights imposed. If in truth such a rejection was made at that time, in conformity with our expressions in *State Farm*, supra, we would here hold that the insurer would be estopped to deny liability in this case where the plaintiff, having gained a verdict and judgment against the insured, is endeavoring to enforce the judgment against the insurer.

In this case also we are again precluded from entering a formal holding on the point as we do not consider that such a rejection was made since there was in the trial of the case between the plaintiff and the insured a colloquy which, as we view it, constituted an admission in judicio. This colloquy producing the admission as it appeared in the first trial and as introduced in evidence in this case is as follows: "Counsel for plaintiff: 'Your Honor, please, I think this ought to be gotten on the record here what we are talking about.' Counsel for insurer: 'Wait a minute, wait a minute, we filed a reservation, he [the attorney for the insured] has got a right to participate in the defense, that is the position we take.' Plaintiff's counsel: 'All right.' Insurer's counsel: 'Certainly he has got a right to participate. I am sure he has, we are defending on a reservation, we don't exclude him from anything.' Insurer's counsel: 'We are not denying that.' The Court: 'Let the record so show.' Insurer's counsel: 'Let the record show that [personal counsel] . . . is here defending the defendant and that the firm of [insurer's counsel] . . . agreeing thereto, and that their firm is participating in the defense of the case under a reservation of rights.' "

It is particularly to be noted that the insurer's position at the inception of the trial between the plaintiff and the insured was that it was defending the action under a reservation of rights and was not agreeing that there was any insurance coverage under the terms of the policy. At the time this colloquy took place, the individual counsel representing the insured was present. He did not at that time deny that the insurer was defending under a reservation of rights agreement. Where there is a duty to speak, silence constitutes acquiescence. *Smith v.*

*Jones,* 185 Ga. 236 (1), 241 (194 SE 556); *H. C. Whitmer v. Petty,* 54 Ga. App. 377 (187 SE 908). Accordingly, we must conclude that the failure of the insured's counsel to negate the statement that the insurer was defending under a reservation of rights constituted an admission in judicio that the insurer was so defending the action. "Presumptions of law are sometimes conclusive, and an averment to the contrary shall not be allowed. These are termed estoppels, and are not generally favored. Among these are . . . Solemn admissions made in judicio . . ." *Code* § 38-114.

Clearly where both parties state in open court that certain facts are agreed on by them to be true, the facts thus agreed to for purposes of the trial must be accepted and become binding upon both parties. *Southern R. Co. v. Hodgson Bros. Co.,* 148 Ga. 851 (98 SE 541). An admission in judicio eliminates from the case any issues contrary to that admitted. *Lee v. Boyer,* 217 Ga. 27 (120 SE2d 757). A solemn admission in judicio is an estoppel everywhere and forever. *Anderson v. Clark,* 70 Ga. 362.

The colloquy which occurred in the trial between the plaintiff and the insured and which was admitted in evidence in this case shows conclusively that there was an admission in judicio that the insurer was defending the action under a valid reservation of rights which was not rejected by the insured. The legal rights arising from that trial which are properly in evidence in this case obviously control here. Accordingly the admission in judicio in the first trial cannot be rebutted by evidence to the contrary which appears in the record of this case.

It follows that the insurer was defending under a valid reservation of rights and waived nothing by defending the action against the insured.

■ Since the insured was bound by the application and the declarations appearing in the policy as held in Division 1, the question remains whether the false statement of the insured relieves the company of liability under the policy.

The insurer urges that the provisions of the Acts of 1960 (*Code Ann.* § 56-2409) control its liability. We do not agree. This statute established a new Insurance Code for this State

■

which became effective January 1, 1961. Ga. L. 1960, pp. 289, 296. The insurance policy here in litigation was issued on October 8, 1959, and the present action was tried before the effective date of the new Insurance Code. The principles of constitutional law would prevent the retroactive application of the statute to the rights of the parties under the pre-existing contract.

The statutes in force at the time of the issuance of this policy did not specifically provide for the effect of misrepresentations in an application for a policy of liability insurance. Numerous decisions can be found interpreting the statutory provisions relating to false statements in applications for policies of fire and life insurance. By the act of 1960, supra, applications for all types of insurance are regulated by the same statute as to the effect of false or material misrepresentations made therein. In the case of life or fire insurance material misrepresentations, under numerous decisions of our appellate courts, normally give the insurer the right to avoid the policy. Furthermore, where it is shown that a material statement in an application is false which was known to the insured at the time he made it and it was made with a view toward obtaining the insurance, with the company having no knowledge of its falsity, where the company acted upon it to its injury, the law will conclusively presume an intent to deceive, and a case of actual fraud will be made out. *Northwestern Life Ins. Co. v. Montgomery*, 116 Ga. 799 (2) (43 SE 79); *Peninsular Life Ins. Co. v. Screen*, 100 Ga. App. 670 (112 SE2d 174).

In the case of fire and life insurance applications a misrepresentation is material if the misrepresentation changes the character, nature or extent of the risk. *Mobile Fire Dept. Ins. Co. v. Miller*, 58 Ga. 420; *Lee v. Metropolitan Life Ins. Co.*, 158 Ga. 517 (123 SE 737), conformed to, 32 Ga. App. 470 (124 SE 78). Where there is a material misrepresentation, the policy may be avoided. *Aetna Life Ins. Co. v. Conway*, 11 Ga. App. 557 (75 SE 915). *Preston v. National Life &c. Ins. Co.*, 196 Ga. 217 (26 SE2d 439, 148 ALR 897). "Misrepresentation of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party,

constitutes legal fraud." *Code* § 37-703. Although there was not in existence at the time this policy was issued any express statute dealing with the effect of a false representation in an application for a policy of liability insurance, we feel that the same rules governing materiality and the effect of a false material representation apply with equal effect to an application for liability insurance as apply to applications for fire or life insurance.

Under the undisputed evidence the misrepresentation was made in the application and the insured admitted that he had had a previous policy canceled a few months previous to the issuance of the policy in issue. This admission shows conclusively that the misrepresentation was knowingly made. The testimony of the insurer's agent was that the company would have refused to issue the policy had the true fact been known. On cross-examination this witness admitted there was a possibility that a policy might be issued where the company had notice that the applicant for the insurance had previously had a policy canceled, but that no agent had authority to write a policy in such a case unless there had been a previous inquiry and investigation of the matter. In the present case, however, there was no such investigation because the company had no notice of the false statement at or prior to the time the policy was issued.

Although, as we have held, the misrepresentation in the application under the circumstances here was sufficient to warrant the insurance company in rescinding the policy, there is language in the policy itself which would have supported a finding of nonliability as to the insurer, under the existing factual situation, had the company chosen to rely upon it.

Under the general heading, "Declarations," paragraph 2 of the policy stated that no insurer had canceled automobile insurance issued to the named insured or any member of his household within the past three years. Paragraph 10 of the policy conditions provided: "10. Declarations: By acceptance of this policy the insured named in the declarations agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of

such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

Under the undisputed evidence, the misrepresentation in the application in the declaration was material; the insured was bound by it; and the company had the right to avoid the policy. The trial court should have granted the motion for judgment notwithstanding the verdict.

*Judgment reversed with instructions to enter judgment for the defendant. Felton, C. J., and Hall, J., concur.*