## 59629. JARRIEL v. PREFERRED RISK MUTUAL INSURANCE COMPANY.

McMurray, Presiding Judge.

Ted C. Jarriel, Sr., on or about September 4, 1975, sought to purchase automobile insurance (liability and no-fault only) coverage for a 1961 Chevrolet pickup truck from the local agent of Preferred Risk Mutual Insurance Company located in Lyons, Georgia. Jarriel had previously been issued a 6 month policy by the same agent as to a 1966 Ford pickup truck. However, only liability was there involved and, of course, by September, 1975, when he sought the issuance of this policy, mandatory no-fault insurance was required to be issued by law.

Jarriel contends that the only information the agent sought from him was the serial number of the 1961 pickup truck which he then gave to the agent and signed the application for the insurance policy lying on the agent's desk, that is, when he was told "sign here where I have made 'X' mark." He contends he was asked no questions as to this 6 months policy or with reference to the preceding 6 months policy as to his physical impairment and health conditions, his abstinence from the use of alcohol or as to his record as to traffic violations. The policy was then issued but the application was not in anywise made a part or attached to the policy. However, the policy application which was signed by the applicant had thereon certain questions as follows: "Any driver physically impaired or have health condition such as diabetes, epilepsy or heart disease?" Squares to be checked for "no" and "yes" followed. The "no" square was checked instead of "yes." The next issue involved as to the application was one referring to "violations and . . . accidents." A square to be checked for the word "none" was found thereon and it was so checked. In addition, four representations are also found on the form, with squares for checking as to "yes" or "no." With reference to the issue here involved as to No. 4, "Do you now totally abstain from use of all alcoholic beverages and will you do so for the term of this policy?" the square for "yes" was checked. Jarriel contends that he had no knowledge of such questions or representations nor did he furnish any information or was he required to give any information with reference to any of the above. He further contends that he does not know how any such answers may have appeared on the insurance application as checked and he had no knowledge of any such questions upon the application until the commencement of litigation.

Preferred Risk Mutual Insurance Company contends it is a company of non-drinkers for non-drinkers, and that signs to this

effect were located at the local agent's office outside and inside. The local agent contends that he does not know Ted C. Jarriel, Sr., but that his office contained an office copy of the two applications made by Jarriel as to the two 6 months applications for policies of insurance which in his opinion were made by "Marion A. Carson," and the information on the applications is in the handwriting of Marion A. Carson with the exception of the two signatures of Jarriel and that Marion A. Carson is now deceased. He also contends it was a strict rule and custom of his office to make inquiry of all applicants as to their health condition and specifically with reference to diabetes, epilepsy and heart disease. He further deposed no knowledge that Jarriel had heart disease or epilepsy or diabetes or that he had knowledge that Jarriel was a heavy drinker of alcoholic beverages, or that he had been treated for alcoholism. Nor did he have knowledge that he had been arrested on two occasions for driving under the influence of intoxicants but that had he known this, his office would have refused to write insurance coverage with Preferred Risk Mutual Insurance Company. Although the inference here is that the two applications were filled out by one Marion A. Carson, as the agent contends, which may or may not refer to the two 6 months applications or the last application involving no-fault coverage which were signed twice by Jarriel, nevertheless the wife of the agent contends that she took the application from Jarriel with reference to the coverage on September 4, 1975, on the 1961 Chevrolet pickup truck and that in taking applications the "office is required to obtain the information set forth on the application . . . [and] . . . that the applicant be interviewed concerning his health conditions including specifically heart disease, epilepsy and diabetes, as well as the representations and the coverage rejections." Jarriel denies that a female ever talked to him in applying for the insurance but that it was a man. Nevertheless, while the wife of the agent contends that she "personally took from Ted C. Jarriel the application . . . for coverage on a 1961 Chevrolet pickup truck," she does not state unequivocally that she read and interviewed Jarriel personally with reference to the various questions, answers and representations on the form, although she contends that this is required in the office.

After the issuance of the policy, Jarriel, while driving said pickup truck, was involved in an incident with a tree on the side of the road, in which he was severely injured. He duly notified Preferred Risk Mutual Insurance Company as to this incident, cooperating with them by furnishing information concerning his claim. The company, on February 11, 1976, denied all liability on the policy and cancelled same "effective on the date of issuance."

Demand having been made and refused for payment of his loss,

Ted C. Jarriel, Sr., then sued Preferred Risk Mutual Insurance Company, a non-resident, incorporated under the laws of the State of Iowa and doing business in the State of Georgia, by serving an agent located in Laurens County, Georgia. He sought judgment in the sum of $18,611.22, attaching thereto a copy of his policy of insurance with the defendant.

The defendant, in admitting that it is an insurance company incorporated under the laws of Iowa and doing business in Georgia, denied the jurisdiction of the trial court and the claim, admitting only that it had denied liability on the policy and had cancelled it effective on the date of issuance and that plaintiff had demanded payment of his loss which had been refused. Defendant also filed a separate motion to dismiss, based upon the plea to the jurisdiction contending it has no agent and place of doing business in Laurens County and that service was improper "so as to attach the jurisdiction and venue" of the Superior Court of Laurens County. Both the answer and the motion to dismiss contend that the complaint fails to state a claim. In addition to the denial of jurisdiction and venue the defendant also contended in its answer by separate defense that the policy was void ab initio "because of material misrepresentations of fact on the application for insurance signed and submitted by Plaintiff;" hence there was no coverage under the policy. It also defended the action against it in that a substantial portion of the medical expenses sought against it were due to acute and chronic alcoholism and "various other diseases not attributable" to the alleged injuries arising out of the incident here in question.

After considerable discovery in which the various contentions of the parties as shown above were submitted in evidence by deposition or affidavit as well as medical records and other exhibits, the defendant moved for summary judgment, contending therein that the policy was void because of material misrepresentations of fact on the application for insurance "signed and submitted by Plaintiff"; therefore, no coverage was afforded under the policy sued upon. The trial court then issued an order finding there was no genuine issue as to any material fact which entitled the defendant to a judgment as a matter of law. The summary judgment was granted in favor of the defendant against the plaintiff, and the complaint was dismissed. Plaintiff appeals. *Held:*

Under our decision in *Tallent v. Safeco Ins. Co.,* 99 Ga. App. 11 (107 SE2d 331), the trial court erred in granting summary judgment in favor of the defendant. Issues of material fact remain for the jury as to whether the erroneous answers on the application for insurance were the result of negligence or fraud of the insurance agent who was acting on behalf of and whose actions are attributable to the

insurance company. See also *Stillson v. Prudential Ins. Co.,* 202 Ga. 79 (42 SE2d 121) and *Barber v. All American Assur. Co.,* 89 Ga. App. 270 (79 SE2d 48).

The case of *Tallent v. Safeco Ins. Co.,* 99 Ga. App. 11, supra, is, to all intents and purposes, the same as the case sub judice except that in the case sub judice the plaintiff contended that he was merely told to "sign here" in making the application. Further, he contends he made this application with a man, yet the insurer claims it was taken by a female. Citing *Stillson v. Prudential Ins. Co.,* 202 Ga. 79, supra, the case of *Tallent v. Safeco Ins. Co.,* 99 Ga. App. 11, 12, supra, held that the insurance agent in filling in the blanks on the application "was acting on behalf of the insurance company and not the plaintiff and we think that such action amounted to negligence or fraud on the agent's part attributable to the insurance company." Such language is also found in *Stillson v. Prudential Ins. Co.,* 202 Ga. 79, 83, supra, and bases its decision upon *Clubb v. American Accident Co.,* 97 Ga. 502 (25 SE 333), wherein it was held that if the soliciting and forwarding of applications for policies of insurance was within the scope of the duties of an agent of an insurance company "and such agent undertook to prepare for another an application for insurance and willfully inserted therein a false answer to a material question, he will be regarded in so doing as the agent of the company and not of the applicant, and the agent's knowledge of the falsity of the answer will be imputed to the company." Again, in *Barber v. All American Assur. Co.,* 89 Ga. App. 270, 275, supra, this court held that where false answers to questions contained in the application for insurance which would materially affect the risk and would prevent recovery on the policies by the plaintiff the evidence did not demand a finding, and a jury would be authorized to find from the evidence (such as here) that the defendant's agent did not propound the questions to which the alleged false answers were given. The case of *Barber v. All American Assur. Co.,* 89 Ga. App. 270, 276, supra, also cites the case of *National Life and Acc. Ins. Co. v. Sneed,* 40 Ga. App. 131 (2, 3) (149 SE 68) in support of that opinion which in turn bases its decision upon *Clubb v. American Accident Co.,* 97 Ga. 502, supra.

Of course, the above cases were written before Code Ann. § 56-2409 became the law (Ga. L. 1960, pp. 289, 660) and were apparently based on breach of warranty. Code Ann. § 56-2409, supra, states clearly that all statements and descriptions in any application for an insurance policy "shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless: (1) Fraudulent; or (2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or (3)

The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract in as large an amount, or at the premium rate as applied for, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise." In recent decisions cited below, we have held that issues of fact as to this are to be determined by the jury in similar cases as the case sub judice. See *Va. Mutual Ins. Co. v. Hayes,* 150 Ga. App. 756, 758 (258 SE2d 617), citing *United Family Life Ins. Co. v. Shirley,* 242 Ga. 235, 238 (248 SE2d 635).

Another inference which appears from the record in this case which, when construed most strongly in favor of the plaintiff and against the defendant movant for summary judgment, is the fact that this was the second policy that this plaintiff had purchased from this agent involving the same insurer. The plaintiff deposed that in both instances he was never asked any of the questions referred to by the man taking his application but was only told to "sign here." The party opposing a motion for summary judgment is to be given all favorable inferences and the evidence construed most favorably toward the one opposing the motion. See *McCarty v. National Life &c. Ins. Co.,* 107 Ga. App. 178 (129 SE2d 408); *Burnette Ford v. Hayes,* 227 Ga. 551, 553 (181 SE2d 866).

While there was much evidence which would appear to show his bad health, his drinking problem, and his driving record, nevertheless this evidence did not demand a finding in favor of the defendant as was held in the case of *Bourne v. Balboa Ins. Co.,* 144 Ga. App. 55, 57 (240 SE2d 261), which is relied upon by the defendant in its motion for summary judgment. That case is inapposite here for it is reflected there that the application for insurance was attached to and became a part of the policy. Further, in the case sub judice issues of fact remain as to whether the applicant for insurance was in anywise charged with the knowledge of everything in it. Accordingly, a jury should decide who filled in the application as there is considerable conflicting testimony as to who furnished false information, if same be, in fact, false information.

We note further that *Bourne v. Balboa Ins. Co.,* 144 Ga. App. 55, 57, supra, is a two judge decision with the presiding judge concurring in the judgment only. If it be in direct conflict with such cases as *Tallent v. Safeco Ins. Co.,* 99 Ga. App. 11, supra (a three judge decision), and *Stillson v. Prudential Ins. Co.,* 202 Ga. 79, supra (a five to two Supreme Court decision), and *Barber v. All American Assur. Co.,* 89 Ga. App. 270, supra (a three judge decision), we must follow the older controlling cases as binding precedent and certainly the

decision of the Supreme Court. See our Rule 35 (b) (Code Ann. § 24-3635 (b)). Moreover, since *Bourne v. Balboa Ins. Co.,* 144 Ga. App. 55, supra, differs on its facts from the case sub judice, it is not controlling here.

*Judgment reversed. Smith and Banke, JJ., concur.*

Submitted March 12, 1980 — Decided June 13, 1980 — Rehearing denied July 2, 1980 —

*Dubignion Douglas,* for appellant.
*Bruce V. Durden, Hugh B. McNatt,* for appellee.